**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LAKEPOINT LAND GROUP, LLC**<br>4355 Cobb Parkway<br>Suite J 555<br>Atlanta, GA 30339-3896,<br><br>                    Plaintiff,<br><br>     vs.<br><br>**U.S. INTERNAL REVENUE SERVICE**<br>1111 Constitution Avenue, NW<br>Washington, D.C. 20224,<br><br>                    Defendant. | Civil Action No. **23-cv-1553** _____ |

## <u>COMPLAINT</u>

Plaintiff LakePoint Land Group, LLC ("LakePoint") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief against the Defendant, the Internal Revenue Service ("IRS" or the "Service").  LakePoint challenges the IRS's failure to make a timely decision concerning LakePoint's request for public records, as well as its failure to release all responsive and non-exempt records, relating to false statements made by the IRS in Tax Court litigation.  In support, LakePoint alleges the following:

### INTRODUCTION

1.      According to the IRS, in guidance first issued 70 years ago, it is the IRS's duty to "correctly [apply] the laws enacted by Congress" and "to perform this work in a fair and impartial manner, with neither a government nor a taxpayer point of view."  Rev. Proc. 1964-22.  To that end, the Service routinely scrutinizes federal income tax returns filed by Americans for false statements:  false reporting of income, false reporting of expenses, or false reporting of other information of significance, including the dates on documents that could affect a tax determination.

1

As the IRS is wont to say, our system depends on the integrity of information presented to decision-makers in the tax system, such as revenue agents, collection agents, and judges of the United States Tax Court.  True enough.  It is a well-worn axiom that the people "must turn square corners when they deal with the Government."  *Rock Island, A. & L.R. Co. v. United States*, 254 U.S. 141, 143 (1920).

2.      But it is also true—and perhaps even more fundamental to our system of government—that "the Government should turn square corners in dealing with the people."  *See Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891, 1909 (2020) (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229 (1961) (Black, J., dissenting)).  While it is important for taxpayers not to report false information to the IRS, it is even more important for the IRS not to report false information about taxpayers.  The IRS wields tremendous power in our society—including the power to impose stiff financial penalties on citizens for misstatements.  In light of this sweeping authority, Congress requires IRS agents to undertake important procedural steps before these penalties may be imposed on citizens, and to prove to a federal judge that the IRS has taken those steps.

3.      Far from turning square corners, the IRS provided false information to a judge of the United States Tax Court while seeking to impose stiff penalties, and adding insult to injury, the IRS endeavored to obfuscate, cover up, and hide the truth from the taxpayers and the Court.  Specifically, the IRS intentionally backdated an internal document to support the imposition of penalties against LakePoint and LakePoint Land II, LLC ("LakePoint II"), an investment entity that held certain real estate in Georgia, then misrepresented and concealed the backdating to prevent the taxpayers from learning the truth, and submitted false documents and made false statements to the United States Tax Court—including sworn declarations—to support the

imposition of penalties.  All to create the false appearance that the IRS had followed the rules imposed by Congress to protect the citizenry against IRS abuse.  This truly astonishing series of events may well be the tip of the iceberg.

4.     Consistent with the maxim that "[s]unlight is the best of disinfectants," *Buckley v. Valeo*, 424 U.S. 1, 67 (1976), Congress has armed the people with an important tool to ferret out and expose such public-service blight.  The Freedom of Information Act "was intended to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (citations omitted). As the Attorney General recently said, "The principles of open government and democratic accountability are at the heart of who [government personnel] are as public servants and as Americans .... Without accountability, democracy is impossible.  And democratic accountability requires the kind of transparency that the FOIA makes possible.  That's why faithful administration of the FOIA is essential [to] American democracy."[1]  To vindicate these interests of democratic accountability, Lakepoint seeks the records described below.

## PARTIES

5.     Plaintiff LakePoint is a Georgia limited liability company with its principal place of business in Atlanta, Georgia.  Plaintiff is the Tax Matters Partner for Lakepoint II.  In 2013, LakePoint II donated a conservation easement on real estate to a qualified charitable organization for conservation purposes.  Separately, LakePoint II donated the remaining fee simple interest in the real estate to another charity.  LakePoint II claimed tax deductions for the charitable contributions of the conservation easement and the fee simple interest.  LakePoint II's partners

---

[1] DOJ'S SUNSHINE WEEK 2021 KICK-OFF AND ANNUAL FOIA AWARDS (March 16, 2021), available at https://www.justice.gov/oip/blog/dojs-sunshine-week-2021-kick-and-annual-foia-awards.

deducted on their individual tax returns, up to certain limits, a portion of the contributions that corresponded to their respective ownership shares in the partnership. The contributions are the subject of litigation that is currently pending in the United States Tax Court, styled *LakePoint Land II, LLC, LakePoint Land Group, LLC, Tax Matters Partner v. Commissioner*, Tax Court Docket No. 13925-17 (the "Tax Court case").

6.    Defendant IRS is an agency of the U.S. government and is headquartered in Washington, D.C. The IRS has possession, custody, and control of certain public records that Plaintiff has sought to access under the Freedom of Information Act, 5 U.S.C. § 552. The IRS is responsible for fulfilling this request.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction to preside over this action under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8.    This Court is the proper venue for this action under 28 U.S.C. § 1391(e).

## FACTS

## Request under the Freedom of Information Act

9.    The Freedom of Information Act "was enacted to facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). FOIA implements "a general philosophy of full agency disclosure" of government records. *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989). The statute accordingly specifies that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules ... shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). An agency must disclose agency records, unless "the agency reasonably foresees that disclosure would harm an interest protected by an

exemption described in [5 U.S.C. § 552(b)]" or "disclosure is prohibited by law."  5 U.S.C.

§ 552(a)(8)(A)(i); *see also U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989).

10.     On April 10, 2023, pursuant to rights granted by Congress under the Freedom of

Information Act, LakePoint submitted to the IRS requests for copies of government records.

LakePoint requested that the IRS produce copies of documents fitting certain categories of

documents relating to the IRS's false submissions to the Tax Court.

**IRS Backdating of Official Records**

11.     In or about July 2015, the IRS initiated an examination, commonly known as an

audit, of certain tax returns filed by LakePoint II.  The IRS assigned Revenue Agent Pamela

Stafford to conduct the audit.  Revenue Agent Catherine Brooks was an immediate supervisor of

Agent Stafford in connection with the audit.

12.     Congress requires the IRS to comply with various internal requirements before

assessing certain penalties against taxpayers.  For example, the Internal Revenue Codes provides

that the IRS may not assess a penalty "unless the initial determination of such assessment is

personally approved (in writing) by the immediate supervisor of the individual making such

determination" or certain higher level IRS officials.  *See* 26 U.S.C. § 6751(b)(1).  Accordingly, to

lawfully assess penalties against LakePoint II, Agent Stafford would have been required to make

the initial determination to assert each penalty, and her supervisor would have been required to

approve that determination in writing before the penalty was assessed.  This approval process

applies to, among other things, certain penalties involving "substantial" and "gross" valuations

under the Code.  *See* 26 U.S.C. §§ 6662(e) & (h) (collectively the "Valuation Penalties").

13.     On or about May 20, 2016, Agent Stafford sent a letter to LakePoint II's

representative stating that the "Service is asserting the accuracy related penalty under IRC § 6662"

and "Gross Valuation Misstatement penalty on the overvaluation of the conservation easement and the fee simple interest donation."  As of that date, Agent Stafford's supervisor had not approved in writing this initial penalty determination.  Consequently, Agent Stafford had not complied with the legal requirements to assert those penalties.

14.     On or about July 12, 2016, Agent Stafford sent Agent Brooks a draft of a document proposing the imposition of penalties.  Later that day, Agent Brooks responded to Agent Stafford, stating "Good job," noted that she had removed "some of the somewhat inflammatory commentary" from the draft, and attached a draft document titled "NOPA #5. F. 886-A Accuracy Related Penalty," which discussed penalties in connection with the audit.  The unsigned draft included certain penalties but included numerous "redline" edits indicating that it was only a draft.

15.     Agent Stafford digitally signed an IRS Form 5701 on July 13, 2016.  The Form 5701 cited certain penalties under sections 6662(b)(1), (b)(2) and (b)(3), of the Internal Revenue Code.  It did *not* cite the Valuation Penalties.

16.     Agent Stafford sent the Form 5701 to Agent Brooks with an email stating, "Please sign this one instead.  It has the correct numbering."  Eight days later, on July 21, 2016, Agent Brooks digitally signed the Form 5701, and emailed it to Agent Stafford, stating, "Tying up loose ends…."  The email attached the final Form 5701, which had been fully executed by both Agent Brooks and Agent Stafford.  But this Form 5701 was riddled with errors:  (1) it did not specify amounts of the penalties; (2) it did not reference the Valuation Penalties; and (3) it referred to another form that purportedly was attached—Form 886-A, Explanation of Items—but no such form had been attached.  This Form 5701 will be referred to as the "Problematic Form 5701."

17.     Later in 2016 and early 2017, other IRS employees noticed the errors, and Agents Stafford and Brooks attempted—unsuccessfully—to fix them.  On or about November 28, 2016,

Agent Stafford emailed Agent Brooks and requested that she sign certain forms for the audit because a "coordinator did not see your signature on them and wants them to be signed." One day later, on November 29, 2016, Agent Brooks digitally signed an IRS form called a "Penalty Consideration Lead Sheet" that proposed various penalties—but not the Valuation Penalties. This will be referred to as the "Problematic Penalty Sheet."

18.     The digital signature included a software-generated timestamp indicating precisely when Agent Brooks signed the Problematic Penalty Sheet: November 29, 2016 (highlighting added).



19.     Several months later, the IRS Office of Chief Counsel noted the absence of the Valuation Penalties and attempted to fix the problem. On or about February 7, 2017, William G. Bissell, an IRS attorney in the Large Business & International ("LB&I") Division, sent a memorandum to IRS Coordinator Tammy Chung, recommending that the Notice of Final Partnership Administrative Adjustment ("FPAA") include the Valuation Penalties "but only after approval in writing by the supervisor." He explained that "[n]o penalty can be assessed unless the initial determination … is personally approved (in writing) by the immediate supervisor of the individual making such determination ...."

20.     Shortly thereafter, Coordinator Chung informed Agent Stafford that the Valuation Penalties would not be asserted against LakePoint II without additional steps. Specifically, on or about February 10, 2017, Coordinator Chung noted that the Problematic Penalty Sheet, "although

signed, does not have the Substantial valuation and gross valuation penalties.  If you want those 2 penalties asserted, please ensure they are on the penalty sheet.  Otherwise, they will ... not be asserted."

21.    Agent Stafford then contacted Agent Brooks about the Problematic Penalty Sheet. On or about February 10, 2017, Agent Stafford forwarded the email from Coordinator Chung to Agent Brooks and attached a new Penalty Lead Sheet that proposed the Valuation Penalties in order to correct the problems.  Agent Stafford backdated this Penalty Lead Sheet to July 15, 2016. In her email, Agent Stafford acknowledged that she "did not get the penalty leadsheet in the case file signed by you as is required by the [Internal Revenue Manual]."

---

**From:** Stafford Pamela V
**Sent:** Friday, February 10, 2017 2:35 PM
**To:** Brooks Cathy
**Cc:** Chung Tammy
**Subject:** FW: please sign penalty sheet

Cathy,

They are getting ready to issue the FPAA for the LPL2 returns.  I did not get the penalty leadsheet in the case file signed by you as is required by the IRM.  Also, per Tammy's e-mail below, I did not include two penalties on the leadsheet, even though they are included in the NOPA being issued for the penalties.

Will you please sign this leadsheet so that I can forward to Tammy? Thanks
Pam

---

22.    Less than half of an hour later, Agent Brooks commented on the significance of their failure to follow the rules.  Specifically, on February 10, 2017, Agent Brooks characterized their failure as a "HUGE oversight:"

**From:** Brooks Cathy█████████████████████
**Sent:** Friday, February 10, 2017 3:00 PM
**To:** Stafford Pamela V████████████████████
**Subject:** FW: please sign penalty sheet

HUGE oversight

*Best regards,*

Cathy Brooks
IRS, Large Business & International Division

23.    Agent Brooks could have simply forgone the Valuation Penalties.  Instead, in February 2017, Agent Brooks added the Valuation Penalties to the Penalty Lead Sheet, and she too backdated it to July 2016.  To that end, in the space for "Manager Approval," Agent Brooks wrote: "/s/ Catherine C Brooks – penalties were discussed and approved by me – CCB," and in the space for "Date," Agent Brooks wrote, "7/16/2016."  This was false.

24.    Agent Brooks took steps to conceal the backdating.  She intentionally did not digitally sign this lead sheet, as she had done when approving other penalty assessments (*see* ¶ 18 *supra*), because a digital signature would reflect the true date on which she personally approved this Penalty Lead Sheet.  Instead, she typed the date "7/16/2016" on the form, which will be referred to as  the "False Penalty Lead Sheet."



Manager Approval: /s/ Catherine C Brooks –
penalties were discussed and approved by me - CCB          Date: 7/16/2016

Rev. 6/2008                                                    Workpaper #:

On or about February 10, 2017, Agent Brooks returned the False Penalty Lead Sheet to Agent Stafford.

25.     Relying on the False Penalty Lead Sheet, the IRS on or about March 27, 2017, issued the Final Partnership Administrative Adjustment, which assessed the Valuation Penalties. In this way, Agents Stafford and Brooks circumvented the protections afforded taxpayers by Congress.

26.     LakePoint II filed a petition in United States Tax Court challenging the adjustment, including the Valuation Penalties.  Litigation ensued in the Tax Court.

### IRS Efforts To Conceal the Backdating

27.     To collect the fraudulently imposed Valuation Penalties, the IRS doubled down on the False Penalty Lead Sheet by affirmatively relying on it in the Tax Court case.  On August 11, 2022, the IRS moved for partial summary judgment, representing to the Court that the IRS agents had complied with the penalty approval requirements of the Internal Revenue Code.  In their motion, IRS attorneys claimed that Agent Brooks had approved the Valuation Penalties by signing a Penalty Consideration Lead Sheet on July 16, 2016:

> Revenue Agent Pamela Stafford made the initial determination to assert all of the penalties at issue against petitioner.  *On July 16, 2016*, Agent Stafford's immediate supervisor, Catherine C. Brooks, personally approved Stafford's initial determination of penalties in writing by signing a Penalty Consideration Lead Sheet. Brooks signed the Lead Sheet *again* on November 29, 2019.

Motion for Partial Summary Judgment, Doc. No. 43 at ¶ 10 (emphasis supplied).  IRS lawyers represented that in the Penalty Consideration Lead Sheet, "Agent Stafford asserted all of the penalties that were eventually determined in the FPAA."  *Id*. at ¶ 11.  After discussing the legal requirements, IRS lawyers represented that "Brooks' July 16, 2016 signature on the Penalty Consideration Lead Sheet timely satisfied the requirements [under the law] for the penalties at issue."  *Id*. at ¶ 17.

28.     In support of the misrepresentation, IRS attorneys filed a sworn declaration of Agent Brooks that included false statements and attached the False Penalty Lead Sheet.  The IRS agent declared:

> I reviewed the Penalty Consideration Lead Sheet Agent Stafford prepared and *I signed and approved it on July 16, 2016*, by typing the following language in the lower left-hand corner of the first page of the lead sheet in the "Manager Approval:" section, "/s/ Catherine C. Brooks -."  The symbol "/s/" was meant to stand for my signature.  That line continued beneath with my typed statement "penalties were discussed and approved by me – CCB."  To the right of that last line in the "Date:" field, I typed in "7/16/2016."

Declaration of Catherine C. Brooks dated August 9, 2022, ¶ 3 (emphasis supplied).  Agent Brooks further declared as follows:

> After this case was closed to IRS Technical Services for preparation of a Notice of Final Partnership Administrative Adjustment, I was asked to sign the Penalty Consideration Lead Sheet *again* because agent Stafford informed me that the Technical Services representative had "indicated that she saw your signature on the penalty NOPA [Form 5701], but still wants the form signed," even though I had previously signed it.  I then signed the penalty lead sheet *approving all penalties for a second time* on November 29, 2016 using my digital signature.  A copy of the Penalty Consideration Lead Sheet that I signed and approved on two separate occasions is attached as Exhibit A.

*Id.*, ¶ 4 (emphasis supplied).  Agent Brooks represented that "I know the foregoing facts to be true to the best of my knowledge and belief," and "declare[d] under penalty of perjury of the laws of the United States of America that the foregoing is true and correct."

29.     Agent Brooks' statements under penalty of perjury were false.  In truth, Agent Brooks did not sign and approve any penalty lead sheet on July 16, 2016.  And the Problematic Penalty Sheet she signed on November 29, 2016—the *first* one she signed—did not approve "all penalties," let alone approve them "for a second time."

30.     As the Tax Court case proceeded, the IRS endeavored time and again to obfuscate the truth about the False Penalty Lead Sheet.  On October 7, 2022, LakePoint II served the IRS

with three documents – (1) Requests for Admission, (2) Interrogatories, and (3) Requests for Production of Documents.  In the request for documents, LakePoint II asked for various categories of documents relating to Agent Brooks' declaration, including with respect to the determination to assert the Valuation Penalties.  In response, on or about October 13, 2022, the IRS purported to provide a copy of its administrative file for the audit, which generally would include the correspondence between the agents with respect to the audit, including about the Valuation Penalties.  Letter from W. Bissell, General Attorney, IRS LB&I, *In re: LakePoint Land II, LLC v. Commissioner* (October 13, 2022).  But the IRS initially withheld the correspondence among Coordinator Chung, Agent Stafford, and Agent Brooks on February 10, 2017, that could have revealed the truth about the False Penalty Lead Sheet.  Notably, the IRS did not inform counsel for LakePoint II or the Court that the IRS's motion and sworn declaration were false.

31.    The IRS continued to conceal the truth through obfuscation.  LakePoint II's request for admissions asked the IRS to admit certain facts around the False Penalty Lead Sheet, including that the IRS "contends that Agent Brooks executed the July Lead Sheet on July 16, 2016.  *See* IRS Response to First Request for Admissions, dated Nov. 7, 2022, ¶ 24.  In its response, the IRS no longer asserted that Agent Brooks had signed the False Penalty Lead Sheet on July 16, 2016, and instead claimed a "lack of sufficient information [regarding] the exact date the lead sheet was executed."  *Id*.  The IRS attorneys apparently knew the truth about the False Penalty Lead Sheet.  But the IRS attorneys did not inform LakePoint II or the Tax Court that the IRS's motion and sworn declaration were false.

32.    The IRS's obfuscation did not end there.  LakePoint II asked "why Agent Brooks did not use Adobe Sign or similar software that would register the date and time of her alleged signature on the July Lead Sheet."  *See* IRS Response to Partnership's Second Interrogatories dated

Nov. 7, 2022, ¶ 5.  Sidestepping the truth, the IRS stated that the law "does not require that supervisory approval of the determination to assess a penalty be made by 'Adobe Sign or similar software.'"  *Id*.  Once again, the IRS did not inform LakePoint II or the Tax Court that the IRS's motion and sworn declaration were false.

33.     The IRS continued to bob and weave.  In the request for documents, LakePoint II asked the IRS to produce documents and communications "in their original, native format with the metadata preserved, establishing that Agent Brooks executed the July Lead Sheet on July 16, 2016."  Petitioner's Request For Production of Documents dated October 7, 2022, Request 9.  The IRS responded by pointing to the False Penalty Lead Sheet, "which petitioner already has in its possession," and referencing without explanation certain "enclosed emails."  Unable to fully dodge the request for documents, the IRS gave LakePoint II the February 10, 2017 emails among Coordinator Chung, Agent Stafford, and Agent Brooks (described in ¶¶ 20-24 above).  But to conceal the truth about the False Penalty Lead Sheet, the IRS did not: produce the documents in native format, produce emails with their corresponding attachments, identify any documents as attachments to emails, include all emails or their attachments, or label the documents by file name.

34.     The IRS's obfuscation continued further.  On December 19, 2022, the IRS filed a Supplement to its Motion for Partial Summary Judgment, with a second misleading declaration by Agent Brooks in which she failed to acknowledge the falsity of the August 9, 2022 declaration and instead falsely claimed to have, "personally approved Agent Stafford's determination of penalties on July 21, 2016" though executing the Problematic Form 5701.  Although almost certainly aware of the backdated documents, the IRS attorneys *still* did not alert the Tax Court.  Instead, the IRS attorneys attached the Problematic Form 5701.  *See* Declaration of Catherine C. Brooks dated Dec. 14, 2022, ¶ 2.  The Problematic Form 5701 did not include the Valuation Penalties (as described

in ¶ 16 above).  However, the IRS misleadingly attached another IRS form—a Form 886-A Explanation of Items—even though Agent Brooks had not included that form as an attachment to the Problematic Form 5701 when she emailed it to Agent Stafford.  The Form 886-A was intended to create the false impression that it was part of the Problematic Form 5701, curing the deficiencies by identifying the Valuation Penalties. This mix-and-match pivot, coupled with the misleading use of an "attachment" that was not attached when Agent Brooks signed the Problematic Form 5701, raises a strong inference that the obfuscation was intentional.

35.     The IRS's concealment did not end there.  LakePoint II pressed further, asking the IRS to explain why Agent Brooks did not use Adobe Sign or similar software that would register the date and time of her alleged signature on the False Penalty Lead Sheet when she used such software for other documents related to LakePoint II both before and after her purported execution of the False Penalty Lead Sheet.  *See* IRS Response to Partnership's Second Interrogatories, dated Feb. 21, 2023, ¶ 5.  Dodging the truth yet again, the IRS did not answer the question, and instead stated that the law does not require that the approval be made by Adobe Sign or similar software. *Id*.  Still, the IRS lawyers did not inform LakePoint II or the Tax Court that the IRS's motion and sworn declaration were false.

36.     The IRS's obfuscation was successful—at least initially.  Relying on the multiple false statements submitted by IRS agents and attorneys, the Tax Court adopted the IRS's fictional story about the approval of the Valuation Penalties.  The Court ruled:

> On July 15, 2016, RA Stafford prepared a penalty consideration lead sheet (July Lead Sheet).  On July 16, 2016, RA Brooks personally approved RA Stafford's initial determination of penalties in writing by electronically signing the July Lead Sheet.  The July Lead Sheet asserted all of the penalties that were eventually determined in LakePoint's final partnership administrative adjustment (FPAA).

Order Granting Motion for Partial Summary Judgment, Doc. No. 95 (March 24, 2023).

14

37.    Only after being further pressed did the IRS belatedly admit that the declaration was not true.  Reluctantly, and *solely* due to the efforts of LakePoint II, the IRS acknowledged the falsity of the declaration.  But it was far from a full confession.  Intransigent to the end, the IRS attorneys represented to the Court that it "*inadvertently* alleged incorrect facts" and "has *now* determined that RA Brooks did not sign the Penalty Lead Sheet, dated July 15, 2016, on July 16, 2016, as she believed and as she stated in the First Brooks Declaration (filed on August 11, 2022)." Respondent's Motion for Reconsideration, Doc. No. 106 at 4 (April 19, 2023) (emphasis supplied). The representation that the IRS attorneys had "now" determined the truth around the False Penalty Lead Sheet is belied by the evidence that they had known it for some time.

38.    Remarkably, the IRS's obfuscation continued.  In support of its Motion for Reconsideration, the IRS submitted a third declaration from Agent Brooks.  In the declaration, she stated that she had "been made aware that my Declaration, dated August 9, 2022 ... included an incorrect statement that I signed a Penalty Approval Lead Sheet on July 16, 2016," and that her backdating of the form—including intentionally not using a software-generated timestamp— was an "unintentional error."  Declaration of Catherine C. Brooks dated April 19,  2023, at ¶ 2.

39.    LakePoint's FOIA request—and this complaint—seek accountability and revelation of the truth—the *whole* truth—that the IRS heretofore has steadfastly concealed.

**Plaintiff's FOIA Requests Are Proper Under The Law**

40.    Plaintiff's FOIA request asked the IRS to produce copies of documents fitting any of the following separate categories of documents relating to *LakePoint Land II, LLC, LakePoint Land Group, LLC, Tax Matters Partner v. Commissioner*, Tax Court Docket No. 13925-17:

   A. All versions of the Penalty Consideration Lead Sheet purportedly prepared by Pamela V. Stafford and all versions of the Penalty Consideration Lead Sheet purportedly approved by Catherine C. Brooks, in native form, and all associated metadata, including all versions of the document with a purported preparation date

of 07/15/2016, and all versions of the document with purported approval dates of 7/16/2016 and 11/29/2016, and all versions of the document truthfully approved on or about 11/29/2016 and 2/10/2017.

B. All drafts of the Declaration of Catherine C. Brooks dated August 9, 2022, filed in the above-captioned case on August 11, 2022 (the "August 2022 Declaration"), in native form, and all associated metadata.

C. All communications, including e-mails and text messages, between and among IRS personnel, including but not limited to Pamela Stafford, Catherine C. Brooks, Tammy Chung, William G. Bissell, Robin Greenhouse, Richard A. Rapazzo, Carol B. McClure, Scott Shields, and Drita Tonuzi relating to the preparation or content of the August 9, 2022 Declaration, including the statements in the Declaration:

   i. "I reviewed the Penalty Consideration Lead Sheet Agent Stafford prepared and I signed and approved it on July 16, 2016, by typing the following language in the lower left-hand corner of the first page of the lead sheet in the 'Manager Approval:' section, '/s/ Catherine C Brooks -.' The symbol "/s/" was meant to stand for my signature. That line continued beneath with my typed statement 'penalties were discussed and approved by me – CCB." To the right of the last line in the 'Date:' field, I typed in '7/16/2016.'" *Id.* at 2.

   ii. "After this case was closed to IRS Technical Services for preparation of a Notice of Final Partnership Administrative Adjustment, I was asked to sign the Penalty Consideration Lead Sheet again because agent Stafford informed me that the Technical Services representative had 'indicated that she saw your signature on the penalty NOPA, but still wants the form signed", even though I had previously signed it. I then signed the penalty lead sheet approving all penalties for a second time on November 29, 2016 using my digital signature. A copy of the Penalty Consideration Lead Sheet that I signed and approved on two separate occasions is attached as Exhibit A." *Id.*

D. All communications, including e-mails and text messages, between and among IRS personnel, including but not limited to Pamela Stafford, Catherine C. Brooks, Tammy Chung, William G. Bissell, Robin Greenhouse, Richard A. Rapazzo, Carol B. McClure, Scott Shields, and Drita Tonuzi, relating to the preparation or content of the August 11, 2022 Motion for Partial Summary Judgment, including the statements in the Motion:

   i. "Revenue Agent Pamela Stafford made the initial determination to assert all of the penalties at issue against petitioner." *Id.* at 3.

   ii. "On July 16, 2016, Agent Stafford's immediate supervisor, Catherine C. Brooks, personally approved Stafford's initial determination of penalties in writing by signing a Penalty Consideration Lead Sheet." *Id.*

16

    iii.  "Brooks signed the Lead Sheet again on November 29, 2019." *Id.*

    iv.  "On the Penalty Consideration Lead Sheet Agent Stafford asserted all of the penalties that were eventually determined in the FPAA." *Id.* at 4.

    v.  "Brooks personally approved, in writing, Agent Stafford's initial determination of the penalties by signing the Penalty Consideration Lead Sheet on July 16, 2016." *Id.* at 5.

    vi.  "As a result, Brooks' July 16, 2016 signature on the Penalty Consideration Lead Sheet timely satisfied the requirements of I.R.C. § 6751(b) for the penalties at issue." *Id.*

E.  All communications, including e-mails and text messages, between and among IRS personnel, including but not limited to Pamela Stafford, Catherine C. Brooks, Tammy Chung, William G. Bissell, Robin Greenhouse, Richard A. Rapazzo, Carol B. McClure, Scott Shields, and Drita Tonuzi, relating to the preparation and content of Respondent's Response to Petitioner's Request for Production of Documents dated November 7, 2022, including the statement that: "respondent has been unable to locate any documents responsive to this request," in response to a request for "all unexecuted versions of the July Lead Sheet, in original, native format with all metadata preserved." *Id.* at 6.

F.  All communications, including e-mails and text messages, between and among IRS personnel, including but not limited to Pamela Stafford, Catherine C. Brooks, Tammy Chung, William G. Bissell, Robin Greenhouse, Richard A. Rapazzo, Carol B. McClure, Scott Shields, and Drita Tonuzi, relating to the preparation and content of Respondent's Response to First Request for Admissions dated November 7, 2022, and the following statements therein:

    i.  "Respondent contends that Agent Brooks executed the July Lead Sheet on July 16, 2016.  Response:  Admits Agent Brooks executed the penalty lead sheet, denies for lack of sufficient information the exact date the lead sheet was executed." *Id.* at 7.

    ii.  "Agent Brooks did not sign 'the Penalty Consideration Lead Sheet approval [sic] all penalties for a second time on November 29, 2016.'  RESPONSE: Denies.  Agent Brooks signed a Penalty Approval Lead Sheet in July 2016 and in November 2016." *Id.* at 11.

G.  All communications, including e-mails and text messages, between and among IRS personnel, including but not limited to Pamela Stafford, Catherine C. Brooks, Tammy Chung, William G. Bissell, Robin Greenhouse, Richard A. Rapazzo, Carol B. McClure, Scott Shields, and Drita Tonuzi, relating to the collection and production by the IRS of the Administrative File produced to the Petitioner on October 13, 2022.

H. All communications, including e-mails and text messages, between and among IRS personnel, including but not limited to Pamela Stafford, Catherine C. Brooks, Tammy Chung, William G. Bissell, Robin Greenhouse, Richard A. Rapazzo, Carol B. McClure, Scott Shields, and Drita Tonuzi, relating to the preparation and content of Respondent's Response to Petitioner's Second Interrogatories dated November 7, 2022, including:

    i. In response to Interrogatory 5 ("Explain why Agent Brooks did not use Adobe Sign or similar software that would register the date and time of her alleged signature on the July Lead Sheet when she had used such software for other documents related to this Audit both before and after her alleged execution of the July Lead Sheet"), the statement: "Without waiving the foregoing objection, IRC § 6751(b) does not require that supervisory approval of the determination to assess a penalty be made by 'Adobe Sign or similar software.' Rather it requires only that the initial determination of a penalty assessment be 'personally approved (in writing) by the immediate supervisor.' I.R.C. § 6751(b)."

    ii. The determination for not filing the Interrogatory response under oath, as required by Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").

I. All communications, including e-mails and text messages, between and among IRS personnel, including but not limited to Pamela Stafford, Catherine C. Brooks, Tammy Chung, William G. Bissell, Robin Greenhouse, Richard A. Rapazzo, Carol B. McClure, Scott Shields, and Drita Tonuzi, relating to the preparation and content of Respondent's Reply to Petitioner's First Request for Admissions dated November 7, 2022, including the following statement therein:

    i. In response to Request 24 ("Respondent contends that Agent Brooks executed the July Lead Sheet on July 16, 2016"), the response: "Admits Agent Brooks executed the penalty lead sheet, denies for lack of sufficient information the exact date the lead sheet was executed."

J. All communications, including e-mails and text messages, between and among IRS personnel, including but not limited to Pamela Stafford, Catherine C. Brooks, Tammy Chung, William G. Bissell, Robin Greenhouse, Richard A. Rapazzo, Carol B. McClure, Scott Shields, and Drita Tonuzi, relating to the preparation and content of the Declaration of Catherine C. Brooks dated December 14, 2022, filed in the above-captioned case on January 13, 2023.

K. All communications, including e-mails and text messages, between and among IRS personnel, including but not limited to Pamela Stafford, Catherine C. Brooks, Tammy Chung, William G. Bissell, Robin Greenhouse, Richard A. Rapazzo, Carol B. McClure, Scott Shields, and Drita Tonuzi, relating to the preparation and content

of the letter dated March 3, 2023, from Candace M. Williams to Jeff S. Luechtefeld, including the following statements therein:

    i. "[Brooks] approved the penalties … on the penalty consideration lead sheet dated July 15, 2016, and then in an abundance of caution on or about February 10, 2017 when she resigned the lead sheet." *Id.* at 2.

41. None of the materials requested are subject to exemptions or exceptions from FOIA.

**The IRS Failed To Respond Adequately To Plaintiff's Request for Public Records**

42. On April 27, 2023, the IRS informed Plaintiff via letter that it would not be able to respond to the request within the 20 business-day period required by law and that it would extend the response time, as permitted by law, by an additional an additional 10 days to May 22, 2023. Further, the IRS stated, "Unfortunately, I will still be unable to respond to you by the extended statutory response date" and "I expect to provide you with final response to your request by August 17, 2023." The IRS further stated, "[Y]ou do have the right to file suit for a judicial review. You can file suit after May 22, 2023."

43. Plaintiff has exhausted available administrative remedies with respect to its FOIA request to the IRS.

**COUNT I**

**Defendant Has Wrongfully Withheld Non-Exempt Public Records
In Violation Of FOIA, 5 U.S.C. § 552.**

Plaintiff incorporates and re-alleges Paragraphs 1–43.

44. Plaintiff submitted to Defendant requests for public records that reasonably described the records sought and fully conformed to Defendant's published FOIA regulations.

45. Defendant has withheld, and continues to withhold, non-exempt documents responsive to Plaintiff's FOIA requests.

19

46.     Accordingly, Defendant has unlawfully withheld, and continues to unlawfully withhold, public records in violation of 5 U.S.C. § 552.

47.     Defendant's conduct has caused irreparable harm by depriving Plaintiff of its right to public records under the law.  Defendant's conduct will continue to cause such harm until Defendant is compelled to obey the law.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

A.     Order the Defendant to conduct an adequate search for all records responsive to Plaintiff's FOIA requests and demonstrate the use of search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA requests.

B.     Order the Defendant to produce, by a certain date, all non-exempt records responsive to Plaintiff's FOIA requests and a *Vaughn* index of any responsive records withheld under claim of exemption.

C.     Enjoin the Defendant from continuing to withhold all non-exempt records responsive to Plaintiff's FOIA requests.

D.     Award Plaintiff its cost and reasonable attorneys' fees in this action, according to 5 U.S.C. § 552(a)(4)(E).

E.     Award any other further relief that the Court deems equitable and just.


Dated:  May 31, 2023                              Respectfully submitted,

                                                  /s/ _____
                                                  Rod J. Rosenstein (D.C. Bar No. 432439)
                                                  KING & SPALDING LLP
                                                  1700 Pennsylvania Ave., NW
                                                  Suite 900
                                                  Washington, DC 20006
                                                  Telephone: (202) 737-0500

                                                  *Counsel for Plaintiff LakePoint Land Group, LLC*

20